## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **TRAVIS R. PHILLIPS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JPMORGAN CHASE BANK, N.A.,** | § | **CIVIL ACTION NO.  1:18-cv-00501-RP** |
| **FIRST NATIONAL BANK, GROVER J.** | § | |
| **GEISELMAN, III, JOHN G. HOFFMAN,** | § | |
| **AND H. DALTON WALLACE** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR SANCTIONS

JPMorgan Chase Bank, N.A. ("JPMC") moves the Court to enter sanctions against Travis R. Phillips and his attorneys under Texas Rule of Civil Procedure 13 and Chapter 10 of the Texas Civil Practice and Remedies Code and respectfully shows as follows:

### I.      BACKGROUND

This is the seventh frivolous lawsuit Plaintiff has filed to delay or prevent the foreclosure of the property located at 2803 Hubbard Circle, Austin, Texas 78746 (the "Property"). The first three were dismissed by this Court for failure to state a claim.  *See Travis R. Phillips v. JPMorgan Chase Bank, N.A.,* Cause No. 1:12-cv-00905 ("Suit 1"); Cause No. 1:14-cv-00054 ("Suit 2"); and Cause No. 1:14-cv-00544 ("Suit 3").  Suit 3 was dismissed with prejudice.  In the fourth suit, JPMC was granted summary judgment by this Court as to all of Plaintiff's claims.  *See* Cause No. 1:15-cv-00790 ("Suit 4"). Plaintiff's claims in fifth suit was also dismissed with prejudice by this Court. *See* Cause No. 1-16-cv-287-SS ("Suit 5").  In the order granting the dismissal, Plaintiff was warned to read and review Federal Rule of Civil Procedure 11 before filing any other lawsuits related to these issues and was further warned that further filing "will result in severe monetary

sanctions, including but not limited to reasonable attorney's fees related to JPMorgan's defense of claims brought by Phillips beginning July 16, 2014." *See* Suit 5, Doc. 23, attached as Ex. A. The Fifth Circuit affirmed the dismissal of Suit 5.  *Travis R. Phillips v. JPMorgan Chase Bank, N.A.*, 673 Fed. Appx. 449 (5th Cir. 2017). Plaintiff's sixth suit was dismissed with prejudice by this Court. *See* Cause No. 1-17-cv-01074 ("Suit 6"). The Court reiterated its prior warning:

> JPMorgan initiated its foreclosure efforts of the Property in 2012.  Since then, Phillips has repeatedly sought court intervention to prevent foreclosure.  He has successfully delayed foreclosure for years with meritless legal actions.  These actions continue to waste time and resources.  Thus, the Court repeats its earlier warning to Phillips and his counsel: continued dilatory tactics through the court system will result in severe monetary sanctions.

Suit 6, Doc. 21, attached as Ex. B.[1]

Despite the Court's warnings, Plaintiff filed the present lawsuit on June 1, 2018 seeking a TRO in state court to prevent the foreclosure sale.  Doc 1-1, p. 14. Plaintiff's newest, and still frivolous, claims rely on JPMC's alleged failure to provide a payoff statement and Plaintiff's request for a declaratory judgment that a potential refinancing lender be equitably subrogated to JPMC's lien priority "prior to the disbursement of [the payoff funds] to JPMC[.]" *Id.* at p. 13. Plaintiff–now for the **seventh** time–brings frivolous claims which fail as a matter of law. Plaintiff's claims are barred by, *inter alia*, *res judicata*. Because this lawsuit was filed for the improper purpose of causing unnecessary delay and the factual contentions in Plaintiff's Petition lack evidentiary support, JPMC requests that, consistent with the Orders entered in Suits 5 and 6, the Court grant JPMC its attorneys' fees and expenses related to the defense of claims brought by

---

[1] JPMC requests that the Court take judicial notice of the filings and Orders in the prior lawsuits, including Exs. A and B.  Fed. R. Civ. P. 201.

Plaintiff beginning July 16, 2014 and retain jurisdiction over this matter until after the foreclosure sale scheduled for August 7, 2018 has been completed.

## II.    ARGUMENT AND AUTHORITIES

### A.    This Court may sanction Plaintiff and his attorneys for pre-removal actions.

Plaintiff filed his lawsuit in state court before this matter was removed to this Court. *See* Doc. 1-1, p. 6. "The Fifth Circuit has explicitly held that federal courts have the authority to issue sanctions under state law when a party commits a sanctionable act in a state court action that is later removed to federal court." *Doss v. NPC Intern., Inc.*, 460 Fed. Appx. 362, 369 (5th Cir. 2012) (citing *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000)). When issuing sanctions under these circumstances, it is appropriate to apply state sanctions rules to pre-removal pleadings filed in state court. *Tompkins*, 202 F.3d at 787. This Court should consider the applicability of sanctions under the Texas Civil Practice and Remedies Code and TRCP 13. *Id.*[2]

### B.    Sanctions are appropriate under Chapter 10 of the CPRC.

Sanctions are available under Chapter 10 of the Texas Civil Practice and Remedies Code. *See Thottumkal v. McDougal*, 251 S.W.3d 715, 717 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The language and standards of Chapter 10 relating to sanctions are similar to the language and standards of Rule 11(b). Section 10.001 of the Texas Civil Practice and Remedies Code provides:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

---

[2] Where a party asks a federal district court to impose sanctions for another party's pre-removal conduct, the 21-day safe harbor letter contemplated by Federal Rule of Civil Procedure 11(c)(2) is not required. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, No. 3:09-CV-220-MU, 2009 WL 3254895, at *1 (W.D.N.C. Oct. 6, 2009) (specifically noting the state rule analogous to FRCP 11 did not have the 21 day safe harbor provision and finding the safe harbor provision under the federal rule did not apply).

(1)    the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)    each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)    each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

Tex. Civ. Prac. & Rem. Code § 10.001. "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." *Id*. at §10.004(a). "A motion for sanctions must describe the specific conduct violating Section 10.001." *Id*. §10.002(a).

### 1.    This lawsuit was brought for the improper purpose of delay.

This Court is aware of Plaintiff's dilatory tactics. Plaintiff is merely attempting to delay the foreclosure of the Property, worth nearly one million dollars according to Plaintiff (*see* Doc. 1-1, p. 11, ¶ 24), in which he has lived without paying his mortgage for approximately nine years.

In the first suit, filed February 7, 2012, Plaintiff's only causes of action were for injunctive relief to prevent foreclosure scheduled for the same day the lawsuit was filed. *See* Suit 1, Doc. 9, p.3. After obtaining two consecutive *ex parte* TROs enjoining the sale, Plaintiff failed to respond to JPMC's Motion to Dismiss. *Id*. Nonetheless, this Court addressed the merits and found Plaintiff's allegation that JPMC was not the mortgagee to be immaterial and controverted by the facts while Plaintiff's allegation that he did not receive the twenty day notice of default was not supported by evidence when in fact JPMC had properly sent the notice. *Id*. at p. 3-4. The claims were dismissed on November 5, 2012. *Id*. at p.5.

In the second suit, filed January 7, 2014 and seven minutes before the scheduled foreclosure sale, Plaintiff's only cause of action was for injunctive relief. *See* Suit 2, Doc. 1-5, p. 4. After obtaining an *ex parte* TRO enjoining foreclosure, Plaintiff again failed to respond to JPMC's Motion to Dismiss. *See* Suit 2, Doc. 6, p. 3. This Court again addressed the merits of Plaintiff's claims. *Id*. at p. 3-4. The Court found Plaintiff was not entitled to any relief holding that Plaintiff lacked standing to enforce a consent decree between JPMC and the Comptroller which JPMC allegedly violated and finding– once again –that Plaintiff's remaining "semblance of a cause of action" that JPMC failed to provide notice of sale twenty days before the foreclosure sale conflicted with Plaintiff's own evidence, a notice of sale dated twenty-eight days before the scheduled sale. *Id*. The claims were again dismissed. *Id*. at p.4.

In the third suit, filed June 3, 2014, Plaintiff asserted "the same basic challenges raised in his previous petitions" and obtained yet another *ex parte* TRO enjoining JPMC from proceeding with a foreclosure sale. *See* Suit 3, Doc. 6. For the third time, Plaintiff failed to respond to JPMC's Motion to Dismiss. *Id*. Despite the unopposed nature of the motion, this Court again addressed its merits. *Id*. This Court held Plaintiff's "show me the note" argument lacked merit and that he still lacked standing to enforce the Consent Order originally complained of in Suit 2. *Id*. Noting it was the third time Plaintiff had filed suit to prevent foreclosure, this Court dismissed Plaintiff's claims **with prejudice** on June 15, 2014. *Id*.

In the fourth suit, filed September 1, 2015, Plaintiff's only causes of action were for injunctive relief to enjoin the foreclosure sale scheduled the same date. *See* Suit 4, Doc.  1-3, p. 9-12. Plaintiff yet again obtained an *ex parte* TRO in state court. *Id*. at p. 16. Plaintiff again based his suit on the false allegation that JPMC failed to provide the proper notices. Unsurprisingly, Plaintiff failed to respond to JPMC's Motion for Summary Judgment and this Court granted it as

unopposed. *See* Suit 4, Doc. 5, p. 4. This Court yet again addressed the merits, finding Plaintiff's claims were unsupported because JPMC did in fact send the requisite notices prior to the scheduled foreclosure sale and finding that Plaintiff was not entitled to injunctive relief absent likelihood of success on the merits. *Id*. This Court granted summary judgment on January 15, 2016. *See* Suit 4, Doc. 6.

In the fifth suit, filed February 29, 2016, Plaintiff expanded his causes of action to include breach of contract, fraud, and filing of false record to go along with his customary request for injunctive relief. *See* Suit 5, Doc. 1-1, p. 17-21. He once again obtained an *ex parte* TRO in state court enjoining JPMC from proceeding with the foreclosure sale scheduled for March 1, 2016. JPMC removed and filed a motion to dismiss. *See* Suit 5, Doc. 4. Plaintiff requested two extensions of time to respond to the motion and, for the first time, responded. *See* Suit 5, Doc. 10. Plaintiff amended his petition, settling on claims that foreclosure was barred by limitations, that there was no valid transfer of the mortgage, and for breach of contract and specific performance of the Deed of Trust based on JPMC's alleged lack of cooperation in providing a reinstatement amount. *See* Suit 5, Doc. 15, p. 11-13.  Relying primarily on the doctrine of *res judicata*, this Court dismissed Plaintiff's claims, noted his dilatory tactics, and warned him about filing future lawsuits. *See* Suit 5, Doc. 23, p. 7. In addition to the dismissal and warning, this Court noted the way in which Plaintiff "conveniently" omitted mention of the Notice of Default and Intent to Accelerate sent to him by JPMC which reset the statute of limitations and defeated Plaintiff's frivolous argument. *Id*. at p. 5.

In the sixth suit, filed May 1, 2017, Plaintiff asserted claims seeking specific performance of an alleged oral agreement with JPMC to assign its lien to a potential refinancing lender, a declaratory judgment that the potential refinancing lien be, *ex ante*, subrogated to JPMC's lien

priority, and, of course, his request for injunctive relief. Plaintiff once again obtained an *ex parte* TRO enjoining JPMC from proceeding with the foreclosure sale scheduled for May 2, 2017. This Court dismissed Plaintiff's claims based on the statute of frauds and the found request for declaratory relief regarding subrogation was premature as "no party has paid a debt here, much less done so involuntarily [.]" Suit 6, Doc. 21, p. 7.

In the present seventh suit, Plaintiff's claims are barred by *res judicata* and are not supported by the law or evidence. Plaintiff has consistently followed the same pattern—file a frivolous lawsuit in state court to obtain an *ex parte* TRO to prevent the scheduled foreclosure sale only to rinse and repeat after this Court dismisses his meritless claims.

None of Plaintiff's prior claims have been meritorious, with five of the six suits dismissed pursuant to Rule 12 while one was disposed of through summary judgment. The pattern of Plaintiff's filings display his purpose of delay.  It is clear from Plaintiff's failure to respond to the dispositive motions that the only purpose of the claims was obtaining an injunction in state court to delay foreclosure, with no intention of attempting to prevail on the merits. The mere fact that Plaintiff has asserted slightly different claims in this, the seventh lawsuit, does not make the present suit non-frivolous. Plaintiff has fabricated claims and misled the Court in an attempt to further delay the foreclosure. If sanctions are not entered against Plaintiff and his counsel, he will likely continue to bring frivolous suits and obtain *ex parte* TROs in state court to prevent a non-judicial foreclosure sale that would have occurred years ago but for Plaintiff's abuse of the legal system.

###### 2.      Plaintiff's claims and legal contentions are not warranted by existing law or by a non-frivolous extension or modification of existing law.

Plaintiff, as in Suit 6, asks the court to enter a declaratory judgment regarding the future lien priority of an unnamed refinancing lender by declaring, *ex ante*, equitable subrogation of a hypothetical refinance lien. Plaintiff asks this Court to create an entirely new type of judicial relief

in which homeowners wishing to refinance an existing loan may guarantee the subsequent lien priority of their refinancing lender when the current lender cannot or will not assign the lien to the refinancing lender and is not contractually obligated to do so. The issue is not ripe and the affected parties are not before the Court—such an *ex ante* determination of rights would not be proper because it is a hypothetical controversy. This Court dismissed Plaintiff's nearly identical claim in Suit 6, so that not only is the request frivolous, it is barred by *res judicata*. If Plaintiff disagreed with the Order entered in Suit 6, the proper mechanism to challenge that ruling was to appeal, not to wait until JPMC rescheduled the foreclosure sale and request the previously denied relief again.

Moreover, a mechanism already exists for the refinancing lender to obtain the lien priority it seeks, making the declaratory relief Plaintiff seeks redundant and unnecessary – further evidence of Plaintiff's purpose of delay. Courts have routinely upheld "renewal and extension riders" as effectively granting a refinancing deed of trust the lien priority of the lien it refinances. *See, e.g., AMC Mortg. Services, Inc. v. Watts*, 260 S.W.3d 582, 585 (Tex. App.—Dallas 2008, no pet.) ("[The] 1996 Smith deed of trust was expressly subordinate to the 1996 Long Beach deed of trust. Likewise, the Smith deed of trust was subordinate to the 1999 Ameriquest refinance deed of trust because it was a renewal and extension of the Long Beach deed of trust."); *McGeorge v. Van Meter*, 358 S.W.2d 580, 582 (Tex. 1962) (foreclosure of second lien which contained renewal and extension language foreclosed interests created between time of original lien and lien with renewal and extension language); *Gillespie v. Ocwen Loan Servicing, LLC*, No. 4:14-CV-00279, 2015 WL 12582796, at *3-4 (S.D. Tex. Oct. 28, 2015) (granting first lien priority to refinancing lender where second deed of trust expressly included renewal and extension language). A renewal and extension rider in the refinancing deed of trust can effectuate the lien priority a new lender seeks. Plaintiff and his attorneys know this - counsel for JPMC made them aware of this procedure in Suit 6 - and

still brought this suit for no other reason than to once again delay the foreclosure. If refinancing was truly a viable option for Plaintiff, he had ample opportunity to do so while protecting the lien priority for any potential refinancing lender.

### 3. Plaintiff's factual contentions do not have evidentiary support.

Plaintiff asks the court to "exercise its equity powers … and order JPMC to provide a total payoff amount so that Plaintiff is able to pay the note in full." Doc. 1-1, p. 12. Plaintiff's frivolous claim is premised on the allegation that JPMC failed to provide a payoff statement in a timely manner which prevented Plaintiff from closing on a refinance. JPMC has no legal duty to provide a payoff amount. *Graves v. Logan*, 404 S.W.3d 582, 586 (Tex. App.—Houston [1st Dist.] 2010) ("[Borrower] has not brought to our attention, and we have not found, any precedential authority to support the existence of an implied covenant to provide a payoff amount in a transaction involving a promissory note and deed of trust. Accordingly, we hold that the trial court erred in granting summary judgment … based on the existence of such a duty."). Even if JPMC owed a duty, Plaintiff pleaded that JPMC provided a payoff quote 6 days prior to the scheduled foreclosure sale. Doc. 1-1, p. 6.[3] Plaintiff seeks a payoff statement he already obtained. Specifically, on May 30, 2018, at 6:10 p.m., Plaintiff's counsel sent an email to JPMC's counsel requesting a payoff statement and advised that "[i]f we are not able to immediately get a payoff figure, we will have no alternative but to again enjoin the sale based on the lender's failure to provide a payoff." Ex. C-1. JPMC's counsel responded on May 31 at 2:05 p.m. with an updated payoff statement. Ex. C-1. Despite immediately receiving the payoff quote as requested in the May 30 email, Plaintiff now alleges May 31 was "far too late to close a refinancing," and therefore enjoined the sale again.

---

[3] Plaintiff's counsel requested a payoff quote from counsel for JPMC on May 29 and again on May 30. Ex. C-1. Counsel for JPMC responded with an updated payoff quote on May 31. Ex. C-1. Thus, Plaintiff's implication that he attempted to obtain a payoff quote well in advance of the foreclosure sale is misleading at best.

Doc. 1-1, p. 6. The incongruity between the email from Plaintiff's counsel and the allegations in Suit 7 is further evidence that Plaintiff received the payoff statement in a timely fashion, and, more importantly, that refinancing was likely not a viable option and the lawsuit was brought in bad faith for no purpose other than delay.[4]

Plaintiff also contends (as he did in Suit 6) he has obtained a commitment for refinance from a third-party, Robert Baldwin.[5] However, the loan commitment from Baldwin indicates the loan shall not exceed $250,000, which is less than the payoff amount. Plaintiff has not obtained an adequate commitment for refinance, and if the refinancing lender is or was prepared to lend the full amount, there was adequate time between the date the payoff statement was provided and the date of the foreclosure sale to effectuate the refinance. Tellingly, the filing of this Motion is approximately three weeks after JPMC provided a payoff statement and Plaintiff has still not refinanced. The alleged loan commitment is dated May 31, 2018, the same day JPMC provided Plaintiff with a payoff statement– more evidence Plaintiff was not legitimately attempting to refinance, that JPMC's alleged failure to timely provide a payoff statement, which it has no duty to provide, has nothing to do with Plaintiff's failure to secure refinancing, and that Plaintiff's claims are brought in bad faith.[6] Plaintiff's allegations were merely a ruse to again delay the foreclosure sale while Plaintiff continued to have the use and possession of the Property without making payments.

---

[4] JPMC's counsel also provided Plaintiff with another payoff quote on June 5, 2018 which is good through July 5, 2018. Ex. C-1.

[5] Baldwin was the refinancing lender referenced in Suit 6, who was allegedly prepared to provide a refinancing loan at least as far back as May 1, 2017. Despite this alleged willingness to offer refinancing for the past year, the parties have curiously been unable to close such a loan.

[6] JPMC provided payoff statements to Plaintiff prior to and in connection with Suit 6 as well, but despite having those payoff statements, Plaintiff was unable to close the refinancing loan. There is no reason to believe this time is any different.

**C.      Sanctions are also appropriate under Texas Rule of Civil Procedure 13.**

To impose sanctions under TRCP 13, "a court must determine that the pleading was groundless, and that the pleading was brought either in bad faith or for the purpose of harassment." *Tompkins*, 202 F.3d at 787. "Groundless for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 362 (Tex. 2014).

Plaintiff's Petition is groundless. Plaintiff's claims are barred by *res judicata* and Plaintiff's requests for equitable relief are not supported by the law or evidence. Plaintiff's bad faith in bringing these lawsuits, which have caused unnecessary delay and needlessly increased the cost of litigation, must stop. Plaintiff has followed the same pattern—file a frivolous lawsuit in state court to obtain an *ex parte* TRO to prevent the scheduled foreclosure sale only to rinse and repeat after this Court dismisses his meritless claims.

Bad faith is the conscious doing of a wrong for a dishonest purpose. *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied). "Improper motive is an essential element of bad faith." *Id.*  Plaintiff's motive in filing this lawsuit, and the six previous suits, is to delay the foreclosure. This improper motive is evidence of Plaintiff's conscious doing of a wrong for a dishonest purpose.

## III.      <u>RELIEF REQUESTED</u>

JPMC requests monetary and non-monetary sanctions against both Plaintiff and his attorneys. Specifically, JPMC requests the Court grant, as sanctions against Plaintiff,[7] JPMC's reasonable attorneys' fees and expenses related to the defense of claims brought by Plaintiff

---

[7] Sanctions against Plaintiff are particularly appropriate because he is an attorney who is identified as "Disbarred" on the State Bar of Texas website. *See* https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=182681

beginning July 16, 2014 through June 20, 2018 in the amount of $52,084.01. Ex. C.[8] That includes JPMC's reasonable attorneys' fees and expenses incurred related to the defense of Suits 4, 5, 6 and fees and expenses incurred through June 20, 2018 in Suit 7. JPMC further requests that the Court grant, as sanctions against Plaintiff jointly and severally with his attorney, George Slade, JPMC's reasonable attorneys' fees and expenses related to the defense of the claims in Suits 6 and 7, in which Slade represented Plaintiff. *See Gilbert & Maxwell, PLLC v. Texas Mut. Ins. Co.*, No 03-05-00787-CV, 2008 WL 5264910, at *4 (Tex. App.—Austin Dec. 19, 2008, no pet.) (sanctions need not be apportioned and may be awarded jointly and severally); *see also In re Zenergy, Inc.*, 968 SW.2d 1, 11 (Tex. App.—Corpus Christ-Edinburg 1997, orig. proceeding) (permitting joint and several sanctions where sanctionable discovery conduct of Plaintiff and counsel under Rule 215 was "interwoven").   That amount is $32,134.94 as of June 20, 2018 but continues to accrue. Ex. C. JPMC further requests that the Court grant, as sanctions against Plaintiff jointly and severally with his newest attorney, Anatole Barnstone, JPMC's reasonable attorneys' fees in defense of the currently pending Suit 7. That amount is $13,165.40 as of June 20, 2018 but continues to accrue. Ex. C.

JPMC has rescheduled the foreclosure sale of the Property for August 7, 2018. JPMC respectfully requests this court retain jurisdiction over this matter until the foreclosure sale has been completed, in order to prevent Plaintiff from dismissing this suit, in which JPMC has already filed an answer, and obtaining yet another *ex parte* temporary restraining order in state court which would further delay the final disposition of this matter, waste the Court and litigants' resources, and unnecessarily increase the costs of litigation.

---

[8] Even with a sanction in this amount, Plaintiff is still financially ahead on his scheme to delay foreclosure while he continues to have the use and possession of the Property without making the monthly payments or paying property taxes.  The escrow advance balance alone is in excess of $141,000.  Ex. C-1.

WHEREFORE, PREMISES CONSIDERED, JPMC respectfully requests that the Court grant this Motion for Sanctions and enter an order directing payment to JPMC for reasonable attorneys' fees and expenses resulting from the violations of Texas state laws.[9] Additionally, as Plaintiff has filed multiple frivolous lawsuits regarding the Property, JPMC requests that this court retain jurisdiction over this matter until the foreclosure sale of the Property is completed on August 7, 2018. JPMC also requests all other such relief to which it is justly entitled.

Respectfully submitted,

_/s/ Gregory M. Sudbury_
WM. LANCE LEWIS
Texas Bar No. 12314560
GREGORY M. SUDBURY
Texas Bar No. 24033367
**QUILLING, SELANDER, LOWNDS,**
    **WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
llewis@qslwm.com
gsudbury@qslwm.com

**ATTORNEYS FOR DEFENDANT**

---

[9] The Court is not required to issue a show cause order before it enters sanctions.  JPMC, however, understands the Court may be inclined to schedule a show cause hearing to allow Plaintiff and Plaintiff's counsel an attempt to explain their frivolous filings and bad faith conduct.  JPMC respectfully requests that any additional fees and expenses incurred in connection with this Motion, including, but not limited to, a show cause hearing, be included in the monetary sanction.

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that on June 25, 2018, counsel for JPMC conferred with counsel for Plaintiff regarding this motion and the relief sought.  In addition, on June 4, when counsel for Plaintiff first notified counsel for JPMC that Plaintiff would seek another temporary restraining order, JPMC's counsel informed Plaintiff's counsel that JPMC would seek sanctions if Plaintiff proceeded with this frivolous lawsuit.  Plaintiff nonetheless proceeded.  Because agreement was not reached regarding this motion and the relief sought, it is submitted to the Court for determination.

*/s/ Gregory M. Sudbury*
Gregory M. Sudbury


## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on June 25, 2018, a true and correct copy of the foregoing pleading has been furnished to Plaintiff via ECF in accordance with the Federal Rules of Civil Procedure.

George B. Slade
LAW OFFICES OF GEORGE B. SLADE
5000 Bee Caves Rd., Ste. 106
Austin, Texas 78746
(512) 347-7085 (Facsimile)
Gslade@sladelawoffices.com

Anatole R. Barnstone
713 West 14th Street
Austin, Texas 78701
(512) 482-8095 (Facsimile)
barnstonelaw@gmail.com

*/s/ Gregory M. Sudbury*
Gregory M. Sudbury