# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TRAVIS R. PHILLIPS | § |
| | § |
| V. | § A-18-CV-501-RP |
| | § |
| JPMORGAN CHASE BANK, N.A., et al. | § |

## FINAL ORDER ON SANCTIONS

Before the Court are Defendant's Supplemental Brief in Support of Its Motion for Sanctions against Attorneys George Slade and Robert Barnstone (Dkt. Nos. 5 & 19); George B. Slade's Response (Dkt. No. 20); Robert Barnstone's Response (Dkt. No. 21); Plaintiff's Objections to the Magistrate's Order (Dkt. No. 22); and Defendant's Reply (Dkt. No. 23). The District Court referred the Motion for Sanctions to the undersigned for resolution pursuant to 28 U.S.C. §636(b), Federal Rule of Civil Procedure 72 and Rule 1(c) of Appendix C of the Local Court Rules.

### I. GENERAL BACKGROUND

This is the seventh lawsuit filed by Travis R. Phillips to prevent the foreclosure of real property located in Austin, Texas ("the Property"). Phillips and his spouse purchased the Property in 1988 with a mortgage currently assigned to JPMorgan Chase Bank, N.A. ("JPMorgan"). Phillips eventually defaulted on his payments, and was unable to obtain a modification of the loan. JPMorgan subsequently initiated foreclosure of the Property, and, as referenced above, Phillips has filed numerous lawsuits to prevent such efforts. The District Court has dismissed all of Phillips' prior lawsuits. *See Phillips v. JPMorgan Chase Bank, NA.*, No. 1:12-CV-905-SS (W.D. Tex. Nov. 5, 2012) (First Suit) (dismissed with prejudice); *Phillips v. JPMorgan Chase Bank, NA.*, No. 1:14-CV054-SS (W.D. Tex. Mar. 4, 2014) (Second Suit) (dismissed with prejudice); *Phillips v. JPMorgan Chase Bank, NA.*, No. 1:14-CV-544-SS (W.D. Tex. Jul. 15, 2014) (Third Suit) (dismissed

with prejudice); *Phillips v. JPMorgan Chase Bank, NA.*, No. 1:15-CV-790-SS (W.D. Tex. Jan. 15, 2016) (Fourth Suit) (summary judgment granted in favor of defendant); *Phillips v. JPMorgan Chase Bank, NA.*, No. 1:16-CV-287-SS (W.D. Tex. May 13, 2016) (Fifth Suit) (dismissed with prejudice); and *Phillips v. JPMorgan Chase Bank, NA.*, No. 1:17-CV-1074-SS (W.D. Tex. Nov. 14, 2017) (Sixth Suit) (dismissed with prejudice).

In addition, the District Court has warned Phillips on two previous occasions that any further court filings by Phillips challenging the foreclosure would result in "severe monetary sanctions." For example, in the Order dismissing his Fifth Suit *with prejudice*, after finding that Phillips' claims were barred by *res judicata*, the District Court stated the following:

> Phillips has—now for the fourth time—failed to state any claim upon which relief can be granted, and has not showed himself entitled to any relief in either law or equity. The dilatory tactics must end. The Court finds any further amendment would be futile and dismisses Phillips' claims with prejudice.
>
> Additionally, the Court hereby expressly warns Phillips and his counsel to read and review Federal Rule of Civil Procedure 11 before filing any other lawsuits related to these issues. *Any further filing of such lawsuits will result in severe monetary sanctions*, including but not limited to reasonable attorney's fees related to JPMorgan's defense of claims brought by Phillips beginning July 16, 2014.

*Phillips v. JPMorgan Chase Bank, N.A.*, 2016 WL 8711408, at *4 (W.D. Tex. May 13, 2016) (Fifth Suit) (emphasis added), *aff'd*, 673 F App'x 449, 450 (5th Cir. 2017). Similarly, in its Order dismissing Phillips Sixth Suit *with prejudice*, after finding that JPMorgan was entitled to dismissal of all of Phillips' claims and any amendment of his complaint would be futile, the Court again warned Phillips what would happen if he filed any future lawsuits attacking the foreclosure:

> JPMorgan initiated its foreclosure efforts of the Property in 2012. Since then, Phillips has repeatedly sought court intervention to prevent foreclosure. He has successfully delayed foreclosure for years with meritless legal actions. These actions continue to waste time and resources. Thus, the Court repeats its earlier warning to Phillips and

> his counsel: continued dilatory tactics through the court system will result in severe monetary sanctions.

Sixth Suit, Dkt. No. 21.

Despite these warnings, Phillips filed his seventh lawsuit in state court against JPMorgan, First National Bank, Grover Geiselman III, John Hoffman and H. Dalton Wallace, once again attempting to stop a foreclosure sale of the home. Phillips Petition sought a temporary restraining order and injunction to prevent the foreclosure arguing that JPMorgan has "failed to provide a pay-off amount and frustrated Plaintiff's good-faith efforts to discharge his obligations under the note." Dkt. No. 1-1 at p. 14. Plaintiff's Petition did not mention that Phillips had filed six previous unsuccessful lawsuits challenging the foreclosure. Because the state court was most likely unaware of Phillips' litigation history, on June 4, 2018, the state court granted a temporary restraining order to prevent the foreclosure and set the matter for a hearing on June 19, 2018, to consider the application for temporary injunction. Dkt. No. 1-1 at p. 36.

On June 14, 2018, JPMorgan removed the case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. On June 25, 2018, it filed a motion for summary judgment arguing that all of his claims are barred by *res judicata*, premature or asserted without standing, and are not supported by the law or the facts. Dkt. No. 6. On July 13, 2018, Phillips filed a motion seeking to dismiss his claims against JPMorgan, contending that it is no longer a necessary party, Dkt. No. 9. On February 28, 2019, the District Court denied Phillips' Motion to Dismiss and granted JPMorgan's Motion for Summary Judgment in favor of JPMorgan on all of Phillips' claims. See Dkt. No. 25.

JPMorgan has also filed a Motion for Sanctions, which was referred to the undersigned, arguing that it is entitled to sanctions in this case because the filing of this lawsuit was merely another attempt to delay the foreclosure of the Property. In addition, JPMorgan argued that all of the claims in this lawsuit are barred by *res judicata* and violate the Court's previous warnings not to file any further lawsuits related to the foreclosure. Accordingly, JPMorgan sought to recover its reasonable attorneys' fees and expenses incurred related to the defense of Suits Four, Five, Six and Seven from the period of July 16, 2014, through June 20, 2018. Because Phillips originally filed this lawsuit in Texas state court, JPMorgan moved for sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13. JPMorgan sought attorneys' fees and expenses it incurred related to the defense of Suits Four through Seven, totaling $52,084.01. JPMorgan further requested that the fees and expenses incurred in Suits Six and Seven be imposed jointly and severally with attorney George Slade, who has been Phillips' counsel in both those suits, and as to Suit Seven, jointly and severally with attorney Anatole Barnstone, who is also counsel in this case.

On November 30, 2018, after determining that it would be appropriate to award sanctions in this case under its inherent powers "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017), the Court determined that JPMorgan is entitled to an award of reasonable attorneys' fees and expenses. See Dkt. No. 18. The Court found that "[G]iven Phillips' delay tactics and his willful violation of two Court Orders, sanctions are appropriate." *Id.* at p. 6. Accordingly, the Court ordered Plaintiff to pay JPMorgan reasonable and necessary attorneys' fees and expenses related to the defense of claims brought by Plaintiff beginning July 16, 2014, through June 20, 2018 in the amount

of $52,084.01, plus any additional reasonable and necessary fees and expenses incurred by JPMorgan after June 20, 2018. *Id.* at p.8. However, the Court withheld ruling on JPMorgan's request that the sanctions be imposed jointly and severally on Phillips' attorneys until it received further briefing on the issue. *Id.* The Court has now received all of the supplemental briefing on the matter and is ready to rule on whether Phillips' attorneys should be held jointly and severally liable for the sanctions. JPMorgan has also submitted evidence demonstrating that it incurred $11,854 in reasonable attorneys' fees and $48.29 in expenses since June 20, 2018. See Dkt. No. 19-1. Thus, JPMorgan now seeks a total amount of $63,986.30 in attorneys' fees and expenses as a sanction in this case.

## II. ANALYSIS

**A.      Plaintiff's Motion for Reconsideration**

After the undersigned issued its Order awarding sanctions, Phillips filed "Plaintiff's Objections to Magistrate's Order" arguing that the Order is erroneous and the District Court should reject the Magistrate's findings. *See* Dkt. No. 22. The Court will construe Plaintiff's Motion as a Motion for Reconsideration of the Order imposing sanctions.[1] In the Motion for Reconsideration, Phillips argues the Order imposing sanctions is erroneous because (1) the Order violates Plaintiff's due process rights to notice and opportunity to respond before imposing sanctions and (2) the Order failed to apply the Supreme Court's established standards for sanctions under its inherent power by

---

[1] If Phillips was attempting to appeal the Magistrate Court's Order to the District Court he failed to follow the Local Court Rules for doing so. Appendix C, Rule 4 of the Local Court Rules for the Western District of Texas provides that a party may appeal a magistrate judge's order on a matter submitted under 28 U.S.C. § 636(b)(1)(A) within 14 days after issuance by filing "a written statement of appeal." Instead of filing a written statement of appeal, Phillips filed objections which are appropriate under matters referred under § 636(b)(1)(B) not § 636(b)(1)(A). Regardless, however, Phillips will be entitled to file an appeal of this Final Order on Sanctions to the District Court as provided in the Federal Rules of Civil Procedure and Local Court Rules.

5

failing to find that Plaintiff acted in bad faith before imposing sanctions; and (3) it was inappropriate to rely on the Court's inherent power to impose sanctions instead of Texas law.² Phillips' arguments are meritless.

    **1.**     **Due Process**

Phillips argues that the undersigned violated his due process rights to notice and opportunity to be heard by imposing sanctions against him under its inherent power instead of under Texas state law. Phillips' assertion that he has had insufficient notice and opportunity to respond to the imposition of sanctions is belied by the clear history in this case. As noted, Judge Sparks warned Phillips on two previous occasions that any further court filings challenging the foreclosure "will result in severe monetary sanctions." Such warnings by the Court satisfy the notice requirements of due process. *In re Perry*, 918 F.2d 931, 935 (Fed. Cir. 1990), *cert. denied*, 502 U.S. 808 (1991). In addition, Phillips was given clear notice of the possibility he could be sanctioned when JPMorgan filed its Motion for Sanctions. Such a request satisfies the notice requirements of due process. *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1418 (5th Cir. 1994). Thus, the notice requirements were clearly satisfied in this case.

Phillips was also given an opportunity to respond to the Motion for Sanctions. Phillips was given an opportunity to file a Response with the Court, which the Court considered before ruling on the Motion for Sanctions. In fact, the Court granted Phillips an extension of time to respond to the Motion. The fact that the Court did not hold a hearing on the Motion for Sanctions does not mean that Phillips was denied due process. In support of his argument, Phillips cites dicta from *Roadway*

---

²Phillips also raises several evidentiary arguments which the Court already considered and rejected in the first Motion for Sanctions. Accordingly, the Court will not readdress those arguments herein.

*Express, Inc. v. Piper*, 447 U.S. 752 (1980), a case about the imposition of sanctions under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 37 in which the Court stated that "attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Id.* at 767. However, as the Fifth Circuit has explained, "the right to a hearing . . . is limited to cases where a hearing would assist the court in its decision." *Travelers*, 38 F.3d. at 1418 (quoting *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1201 (7th Cir. 1987)). "Where the sanctionable conduct occurred in the presence of the court, there are no issues that a hearing could illuminate and hence the hearing would be pointless." *Id.* (quoting *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1495 (7th Cir.1989)); *see also, Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 236-37 (5th Cir. 1990) (holding that failure to have a hearing on attorney's fees did not violate due process where party was notified and all evidence was before the court). All of the issues in this case related to sanctions were fully briefed and are in the record in this case. The requirements of due process were thus satisfied.

**2.     Bad Faith**

Phillips next argues that the Order on Sanctions was erroneous because the undersigned did not make a finding that Phillips acted in bad faith before imposing sanctions under its inherent powers. Phillips ignores the reasoning of the Court's previous Order and Supreme Court precedent holding that federal courts have the inherent power to assess attorney's fees as a sanction for either (1) the "willful disobedience of a court order," *or* (2) "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-6 (1991) (quoting *Alyseka Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)) (internal citations omitted and emphasis added). As the Court reasoned in its previous Order on

7

sanctions, the Court found that sanctions were appropriate in this case based on Phillips' repeated violations of court orders *and* for his bad faith delay tactics. Specifically, the Court found that:

> Phillips and his counsel have violated the District Court's warnings not to engage in delay tactics by filing more lawsuits challenging the foreclosure of Phillips' property. As noted above, the District Court clearly warned Phillips in the Order dismissing his Fifth Case that if he filed any further lawsuits challenging the foreclosure he would face "severe monetary sanctions, including but not limited to reasonable attorney's fees related to JPMorgan's defense of claims brought by Phillips beginning July 16, 2014." *Phillips*, 2016 WL 8711408 at *4. Instead of heeding the District Court's warning, Phillips filed another lawsuit, the Sixth Case. In its dismissal Order of Phillips' Sixth Case, the District Court noted that Phillips has "successfully delayed foreclosure for years with meritless legal actions" and again warned Phillips and his Counsel that "continued dilatory tactics through the court system will result in severe monetary sanctions." Dkt. No. 21 in 1:17-CV-1074-SS.
>
> Phillips ignored these warnings in filing this case, where he once again seeks to halt JPMorgan's foreclosure of the Property. Given Phillips' delay tactics and his willful violation of two Court Orders, sanctions are appropriate. (See citations therein)

Dkt. No. 18 at p. 6-7.

Thus, the Court found that sanctions were appropriate based on the willful violation of court orders and Phillips' bad faith delay tactics. Although Phillips makes much of the fact that the Court did not specifically state that he had acted in bad faith, Phillips' malicious litigation history clearly constitutes bad faith. To clarify, the Court **HEREBY** finds that Phillips's delay tactics in this and in his six previous lawsuits constitutes bad faith.

### 3. <u>Inherent Powers</u>

Phillips also argues that in imposing sanctions it was somehow inappropriate to rely on the Court's inherent power rather than Texas law. See Dkt. No. 22 at p. 2. Phillips' argument is foreclosed by the Supreme Court's holding in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). In *Chambers*, the sanctioned party argued that it was inappropriate for the district court to rely on its

8

inherent powers to impose sanctions instead of the sanctions rules contained in the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. The Court rejected this argument, explaining:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."
>
> ***
>
> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.

*Id.* at 43-46 (internal citations omitted).

Thus, the Supreme Court concluded that there was "nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." Id. at 50. The Court further explained that: "This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id.* at 50. Thus, the Supreme Court held that the district court had discretion under its inherent powers to sanction the party for its bad faith conduct. *Id.* at 55. Accordingly, Phillips' claim fails in light of the Supreme Court's holding in this case.

B.  **Joint and Several Liability of Sanctions**

JPMorgan argues sanctions should be imposed against Phillips and his attorneys jointly and severally with respect to the Sixth and Seventh Suits. JPMorgan argues that both of Phillips' attorneys, George Slade and Robert Barnstone, acted in bad faith by engaging in delay tactics by filing frivolous lawsuits and for violating the District Court's repeated warnings not to file frivolous lawsuits.

Phillips' attorneys George Slade and Robert Barnstone each filed separate briefs arguing that they should not have the sanctions imposed against them jointly and severally. Slade began representing Phillips in his Sixth Suit (Case No. 1:17-CV-1074-SS) and appears to still represent Phillips. Robert Barnstone only represented Phillips for a short time in June of 2018, when he filed the instant lawsuit in state court. Slade drafted the lawsuit to file in state court, but then he referred the matter to Barnstone to file the case because Slade was unavailable to appear at the temporary restraining order hearing.

1. **George Slade**

As noted, Slade represented Phillips in both his Sixth and Seventh Suits. Slade argues that he should not be held jointly and severally liable because he did not act in bad faith and because JPMorgan "has suffered no harm."

The Supreme Court has found that a federal court may assess attorney's fees as a sanction for the "willful disobedience of a court order" and when a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers*, 501 U.S. at 45-6. The Supreme Court has also recognized the court's inherent power to assess attorney's fees against counsel who has abused the judicial process. *See Roadway Exp.*, 447 U.S. at 766 ("If a court may tax counsel fees against a party

who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes."); *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 n.10 (5th Cir.) ("The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it."), *cert. denied*, 392 U.S. 928 (1968). The Supreme Court has made it clear that such sanctions "must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). "In other words, the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.*

As noted above, the District Court clearly warned Phillips and his counsel in the Order dismissing his Fifth Case that if they filed any further lawsuits challenging the foreclosure they would face "severe monetary sanctions, including but not limited to reasonable attorney's fees related to JPMorgan's defense of claims brought by Phillips beginning July 16, 2014." *Phillips*, 2016 WL 8711408 at *4. Instead of heeding the District Court's warning, Slade filed another frivolous lawsuit, the Sixth Case. In its dismissal Order of Phillips' Sixth Case, the District Court noted that Phillips has "successfully delayed foreclosure for years with meritless legal actions" and again warned Phillips and his Counsel that "continued dilatory tactics through the court system will result in severe monetary sanctions." Dkt. No. 21 in 1:17-CV-1074-SS.

Slade once again ignored Judge Sparks' warning and drafted the instant lawsuit and directed Barnstone to file the lawsuit on Phillips' behalf as Slade was going to be out of town for the hearing on the TRO. Despite the state court's ruling on the TRO, all of Phillips' claims in this Seventh Suit

11

were barred by *res judicata*. Accordingly, the District Court granted JPMorgan's Motion for Summary Judgment "on all of Phillips's claims." Dkt. No. 6. Given Slade' delay tactics and his willful violation of two Court Orders, Slade has engaged in bad faith conduct and the Court finds that he should be held jointly and severally liable for JPMorgan's attorneys' fees incurred since July 16, 2014.

Slade also objects to the inclusion of any fees related to the instant Motion for Sanctions arguing that under *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178 (2017), a party cannot recover any attorneys' fees arising out of the pursuit of sanctions. Slade is mistaken. The Supreme Court does not state anywhere in *Goodyear Tire* that a party is unable to recover for attorneys' fees arising out of the filing of the motion for sanctions. Instead, in *Goodyear Tire*, the Supreme Court stated that "the fee award may go no further than to redress the wronged party 'for losses sustained;' it may not impose an additional amount as punishment for the sanctioned party's misbehavior." Id. at 1186. "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* Thus, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award." *Id.* at 1188. It is appropriate to make Slade jointly and severally liable for the fees and expenses JP Morgan incurred in responding to the two frivolous suits he filed and prosecuted, which totals $44,037.23. The Court further finds that JPMorgan's request for attorneys' fees is sufficiently specific and adequately supported by evidence. *See, e.g.,* Dkt. Nos. 5-3 & 19-1.

    2.    **<u>Robert Barnstone</u>**

As noted above, Barnstone began representing Phillips on June 1, 2018, when Slade referred the matter to him and asked him to file a lawsuit in state court to restrain the foreclosure of Phillips'

homestead which had been posted by Chase Bank for sale on Tuesday, June 5, 2018. Barnstone contends that the lawsuit was filed based on Phillips' inability to refinance his home because Chase had failed to provide a payoff sum to him. Barnstone argues that he was not aware of the six previous lawsuits or Judge Sparks' warnings when he agreed to represent Phillips in this case. Barnstone avers that he did not find out about Phillips' litigation history until June 4, 2018, when JPMorgan's counsel informed him. Thus, Barnstone argues that sanctions should not be imposed against him since he was unaware of Phillips' litigation history at the time he filed the lawsuit. The Court agrees.

Because Barnstone has demonstrated that he was not aware of Phillips' litigation history or Judge Sparks' previous warnings, the Court agrees that he should not be made jointly and severally liable for any of the sanctions imposed against Phillips. Accordingly, JPMorgan's Motion for Sanctions against Barnstone is **DENIED**.

### III. CONCLUSION AND ORDER

In summary, the Court will impose sanctions against Plaintiff Travis R. Phillips and in favor of JP Morgan Chase Bank, N.A. in the amount of $63,986.30 for reasonable and necessary attorneys' fees and expenses. George Slade shall be jointly and severally liable to JP Morgan Chase Bank, N.A. for $44,037.23 of this amount.

SIGNED this 17th day of May, 2019.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE